|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA | |
| 10 | SAN FRANCISCO DIVISION | |
| 11 | UNITED STATES OF AMERICA, ) | Case No. CR 14-0587 (LB) |
| 12 | Plaintiff, ) | **ORDER** |
| 13 | v. ) | [Re: ECF No. 7] |
| 14 | NUBIA VARGAS, ) | |
| 15 | Defendant. ) | |

**INTRODUCTION**

The government charged defendant Nubia Vargas with operating a motor vehicle on March 1, 2014 (1) under the influence of alcohol and (2) with a blood-alcohol content of .08 or greater, in violation of 36 C.F.R. §§ 1004.23(a)(1) and (a)(2). (Information, ECF No. 1.)[1] The arresting officer stopped Ms. Vargas for allegedly not coming to a complete stop at a stop sign at the intersection of Lincoln Boulevard and South Bowley Road in the Presidio. (Motion, ECF No. 7 at 3.) Ms. Vargas subsequently filed a motion for discovery about other stops at the stop sign and any motor vehicle collisions within 250 feet of the stop sign, all in the one-year period before her arrest on March 1, 2014. (*Id.* at 5.) The court held a hearing on April 23, 2015, and denied the

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of documents.

ORDER (CR 14-587 LB)

1   motion on the record. This order explains that decision.

## STATEMENT

Ms. Vargas asked for discovery initially because the stop sign seemed "visually located further to the right of the auto-traveled roadway than appears customary . . . ." (Clerrides Aff., ECF No. 7-3, ¶ 3 & Ex. B.) Exhibit B shows the stop sign in a broad intersection without any visible obstructions. Subsequently, Ms. Vargas hired an expert, who opined that the stop sign does not conform to the Federal Highway Administration's Manual on Uniform Traffic Control Devices ("MUTCD"). (Jeffery Aff., ECF No. 7-2, ¶ 2 & Ex. A.)  Exhibit A is the MUTCD, and it is also Exhibit B to the government's opposition.  Ms. Vargas's expert says that under the MUTCD, the sign must be between 6 and 12 feet from the edge of the traveled roadway (here, Lincoln Boulevard). (*Id.*, ¶ 4.) Instead, it is almost 20 feet from the edge. (*Id.*)

The MUTCD also says the following relevant things:

- The basic requirements of a sign are that it be legible for whom it is intended and that it be understandable in time to permit a proper response. Desirable attributes include high visibility by day and night. . . . (MUTCD § 2A.0.04, p. 101.)

- Standardization of position cannot always be attained in practice. Examples of heights and lateral locations of signs for typical installations are illustrated in Figure A-2, and examples of locations for some typical signs at intersections are illustrated in Figures 2A-3 and 2A-4. (*Id.* § 2A.16.01.)

- Signs should be located on the right-hand side of the roadway where they are easily recognized and understood by road users. (*Id.* § 2A.16.04.)

- Signs should be located so that they: (A) are outside the clear zone unless placed on a breakaway or yielding support (*see* Section 2A.19) . . . . (*Id.* § 2A.16.06.)

- The clear zone is the total roadside border area, starting at the edge of the traveled way, available for use by errant vehicles. The width of the clear zone is dependent on traffic volumes, speeds, and roadside geometry. . . . (*Id.* § 2A.16.07.)

- For post-mounted signs, the minimum lateral offset should be 12 feet from the edge of the traveled way. If a shoulder wider than 6 feet exists, the minimum lateral offset for post-mounted signs should be 6 feet from the edge of the shoulder. (*Id.* § 2A.19.03; *see also id.*, Figure 2A-3 at 118 (illustrating this).)

- Regulatory signs shall be installed at or near where the regulations apply. The signs shall clearly indicate the requirements imposed by the regulations and shall be designed and installed to provide adequate visibility and legibility in order to obtain compliance. (*Id.* § 2B.01.02.)

- The STOP . . sign shall be installed on the near side of the intersection on the right-hand side of the approach to which it applies. (*Id.* § 2B.10.01.)

1  • The STOP . . . sign shall be located as close as is practical to the intersection it regulates,
2     while optimizing its visibility to the road user it is intended to regulate. (*Id.* § 2B.10.02.)

## ANALYSIS

The issue here is whether discovery about other stops at the stop sign or accidents near it is discoverable under Federal Rule of Criminal Procedure Rule 16(a)(1)(E).  Under that rule, the government must allow the defendant to "inspect and copy or photograph" documents, photographs, tangible objects, buildings, and places within the government's "possession, custody or control" that fall within specified categories including the relevant category here: items material to preparing the defense. Ms. Vargas argues that information is discoverable because the stop sign's location violates the MUTCD. The court disagrees and holds that it does not. Even if it did, the alleged MUTCD violation does not provide a basis for discovery geared toward invalidating the traffic stop and Ms. Vargas's subsequent arrest for a DUI.

As the government points out, the MUTCD specifies a minimum distance from the roadway (6 to 12 feet), not a maximum, and the specification is "'intended to keep trucks and cars that use the shoulders from striking the stop signs or supports.'" (Opposition, ECF No. 10, citing MUTCD fig. 2 A-3 at p. 119 and MUTCD § 2A.19.03). A contrary result does not make sense under the MUTCD's plain language: signs like this one must be located outside the clear zone, which is the area available for use by errant vehicles. (*Id.* §§  2A.16.06, 2A.16.07.) The MUTCD could have specified a maximum distance but does not, providing only that a stop sign must "be located as close as practical to the intersection it regulates, while optimizing its visibility to the road user it is intended to regulate." (*Id.*, citing MUTCD § 2B.10.02.) Moreover, the photograph of the sign shows its visibility, again as required by the MUTCD. In sum, the stop sign complies with the MUTCD, which sets forth the minimum distance requirements and does not specify a maximum.

Ms. Vargas's expert nonetheless reached a different conclusion about the 6 to 12 feet, opining that it requires that the sign be located within the minimum distance of 6 to 12 feet.  (*See* Jeffery Supp. Decl., ECF No. 11-2, ¶ 3.) This opinion does not change the court's conclusion, which is based on a plain-language reading of the MUTCD.  The most relevant sections are MUTCD § 2A.19.03, Figure 2A-3, and the requirements for clear zones of MUTCD § 2A.16.06. Reading

1  those sections in the context of the MUTCD excerpted above results in the conclusion that the
2  specification is a minimum distance from the roadway, not a maximum.
3    Ms. Vargas also argues that the sign's placement still violates the MUTCD's requirement that
4  the sign be located as close as is practical to the intersection it regulates. (MUTCD § 2B.10.02.)
5  She argues persuasively that the issue of whether this sign's location was "as close as is practical
6  to the intersection" is a proper subject of expert opinion. And if the issue were whether a citation
7  for rolling a stop sign were valid, then perhaps the discovery would be relevant to establishing
8  whether this sign's placement is "as close as is practical" to the intersection or to providing the
9  predicate factual discovery for the expert to opine on the issue of compliance with the MUTCD.
10   This does not change the outcome. To address this argument, the court assumes that the stop
11 sign violated the MUTCD.  And Ms. Vargas cites law that supports the conclusion that a traffic
12 signal that violates the MUTCD (such as a yellow light that is not yellow for the requisite period)
13 means that a citation for violating the signal (such as running the red light that comes on too
14 early) is invalid. (*See* Motion, ECF No. 7 at 5, citing *People v. Retke*, 232 Cal. App. 4th 1237,
15 1242, 1244 (2015).) The court thus assumes that a citation for rolling the stop sign is invalid.
16   To invalidate the DUI, the court would have to rule that the arrest for the DUI is the
17 suppressible fruit of a traffic stop that looks objectively reasonable but in fact is unlawful because
18 of a technical, non-obvious violation of the MUTCD. That application of the Fourth Amendment
19 stretches too far. It is one thing to suppress the fruits of a stop that is objectively unreasonable
20 because it is not grounded in reasonable suspicion of an actual traffic violation. It is another thing
21 to exclude a DUI that resulted from the officer's observations of Ms. Vargas's failure to stop at a
22 prominently visible stop sign. The officer's conduct was objectively reasonable even with a
23 MUTCD violation, and the discovery is not discoverable under Rule 16(a)(1)(E).

24                              **CONCLUSION**

25   The court denies the motion for discovery. This disposes of ECF No. 7.
26  **IT IS SO ORDERED.**
27 Dated: April 23, 2015                   _____
                                           LAUREL BEELER
28                                         United States Magistrate Judge